IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VICTOR RODRIGUEZ et al.,
for themselves and similarly situated individuals,

      Plaintiffs,

v.                                                 CASE NO. 6:17-cv-1113-ORL-40DCI

MEARS DESTINATION SERVICES, INC.,
d/b/a Mears Transportation Group,

      Defendant.

_____

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT AND AUTHORIZATION TO ISSUE
NOTICE TO THE CLASS MEMBERS
(and Supporting Memorandum of Law)**

Plaintiffs, Victor Rodriquez et al. (Plaintiffs), and Defendant, Mears Destination Services, Inc. (Mears or Defendant), (collectively, the Parties) move the Court for: (1) preliminary approval of the Parties' Settlement Agreement and Release (Agreement), (2) provisional certification of a class pursuant to Fed. R. Civ. P. 23 that includes the FLSA claims in this case, (3) appointment of Plaintiffs' counsel as Class Counsel to represent the interests of the provisionally certified class, and (4) authorization to issue Notice to the Class. The good cause warranting the entry of an order granting these requests is as follows:

**PLEADINGS AND FACTUAL BACKGROUND**

Plaintiffs originally filed a multi-count Complaint (Complaint) (Doc. 1) on June 19, 2017, against Mears and six Individual Defendants. In their Complaint, Plaintiffs asserted causes of action for: Count I (Declaratory Relief); Count II (Violations of the Fair Labor

Standard Act (FLSA)); Count III (Fraud in the Inducement); Count IV (Unjust Enrichment); Count V (Quantum Meruit); and Count VI (Injunctive Relief). The Complaint sought certification of a class of current and former luxury vehicle drivers under Section 216(b) of the FLSA and certification of a class under Rule 23 of the Federal Rules of Civil Procedure for all other claims. Plaintiffs voluntary dismissed three of the Individual Defendants without prejudice on August 3, 2017 (Doc. 81).

Subsequently, on February 27, 2018, Plaintiffs filed their First Amended Collective and Class Action Complaint (Amended Complaint) (Doc. 247). In the Amended Complaint, as part of the settlement negotiations, Plaintiffs dropped all Individual Defendants from the lawsuit, dropped their Fraud in the Inducement claim, and asserted additional causes of action against Mears for Breach of Contract (new Count III) and under the Florida Minimum Wage Act (new Count VI). As in their initial Complaint, the FLSA cause of action was brought under Section 216(b) as a purported collective action, and the other causes of action were brought under Rule 23 as purported class actions.

Mears vigorously disputes the allegations and claims in the Complaint and Amended Complaint. To this end, on August 14, 2017, Mears filed its Answer and Affirmative Defenses to Plaintiffs' Complaint (Answer) (Doc. 85). Relatedly, before Plaintiffs filed their Amended Complaint (which dropped the remaining Individual Defendants from the lawsuit), the Individual Defendants filed a Motion to Dismiss Plaintiffs' Complaint for Failure to State a Claim (Motion to Dismiss) (Doc. 84). Both Mears' Answer and the Individual Defendants' Motion to Dismiss were mooted by the filing of Plaintiffs' Amended Complaint, and Mears

has not yet answered or responded to the Amended Complaint because the case has been stayed.

On March 1, 2018, the Parties filed a Notice of Settlement (Doc. 251), in which they asked the Court to stay the proceedings for thirty (30) days to afford the Parties time to submit the instant Motion. The Court entered an Order (Doc. 252) on March 2, 2018, staying the proceedings and, in doing so, gave the Parties until March 30, 2018, to submit the Motion.

## MEMORANDUM OF LAW

### I.   The Settlement Structure

This is not a typical FLSA case. Indeed, in addition to claimed violations of the FLSA, the Amended Complaint also asserts five state law causes of action and seeks monetary and injunctive relief. The proposed class under the various state law claims includes approximately 912 current and former luxury vehicle drivers. The proposed collective action involves a smaller subset of individuals, all of whom are subsumed within the proposed class action.

Given the unusual circumstances of the multitude of claims at issue in this case, the Parties, after exchanging some discovery required under the Court's FLSA Scheduling Order and additional data, conducted, pursuant to this Court's Order (Doc. 108), an all-day settlement conference before Magistrate Judge Thomas B. Smith. The Parties also exchanged significant evidence and data during the settlement conference conducted by Magistrate Smith. In addition, Mears provided to Plaintiffs' Counsel IRS Forms 1099K and 1099 issued to members of the proposed Settlement Class. After the settlement conference the Parties began engaging in discovery and shared additional information and data about Mears' luxury vehicle operations. The litigation was contentious. With the Court's permission (Doc. 226), however,

the Parties engaged in two weeks of negotiations in mid-to-late February, relying, in part, on suggestions offered by Magistrate Judge Smith.

The Parties have agreed to resolve all claims on fair, adequate and reasonable terms, stipulated (for purposes of settlement only) to class and collective treatment, and developed a comprehensive notice and claim form that allows for effective and fair settlement of all claims and the avoidance of future litigation, while concomitantly preserving Mears' luxury vehicle operations and business model.

Because this case involves several proposed classes under Rule 23 *and* a proposed collective action under the FLSA, notice should be provided under both Rule 23 and Section 216(b). Accordingly, the Parties' Settlement Agreement[1] contemplates that notice will inform each member of the class the projected amount of money that he or she is entitled to if he or she submits a claim within the notice Acceptance Period. Only those individuals who are Class Members, sign the Claim Form opt-ing into the settlement, and do not opt out of the Rule 23 class will receive a payment under the Parties' Settlement Agreement.

The Parties have also agreed on a methodology for determining the amount to be provided to each class member submitting a claim. This methodology was developed during extensive, arm's length negotiations with input from Plaintiffs' attorneys (Class Counsel), Plaintiffs' Litigation Committee, and Mears' attorneys. Due to the challenged independent contractor relationship between the luxury vehicle drivers and Mears, the Parties are unable to

---

[1] Capitalized terms are defined in the attached Settlement Agreement, unless otherwise provided in this Motion.

identify, with precision, actual hours worked by class members during the Class Period.[2] Accordingly, as a basis for a fair and consistent methodology for compensating Class Members for their alleged damages through a settlement, the Parties agreed to rely on each Class Member's total purchased contracted days of services during the Class Period because Mears maintains data tracking this information. Mears generated a table of purchased contracted days of services during the Class Period, and Class Counsel has reviewed this list, comparing it to information provided by Plaintiffs to verify its accuracy and reliability. Within three (3) business days of preliminary approval of the settlement, Mears will provide a final list, calculated in the same fashion, and identifying amounts owed to each Class Member.[3]

The terms of the settlement are set forth more formally in the Settlement Agreement and Release (Settlement Agreement) attached as Exhibit A, but the following summarizes the key terms and conditions of the settlement:

1. The Gross Settlement Amount is $3,100,000. Mears will set up a separate fund and the members of the putative class will submit a claim form in order to receive payment;

2. The class is defined as follows: all individuals who have signed a contract with Defendant as an independent contractor in Mears' Luxury Fleet Division between June 19, 2013, and the date of Preliminary Approval, who contracted with Mears to provide at least

---

[2] Luxury Drivers purchased services from Mears on a weekly, three-or-four day, or daily basis. Each Luxury Driver who purchased weekly service is credited with seven (7) days of contracted service.

[3] During the course of negotiations, Plaintiffs' counsel and Plaintiffs' Litigation Committee relied on preliminary data that Mears provided based on purchased days through certain dates in 2018. Pursuant to the terms of the Settlement Agreement, Mears will provide final purchased days data after Preliminary Approval, and the data will be subject to additional scrutiny should the number of contracted days of service exceed 363,201 by more than ten (10) percent.

seven (7) days of services during the Class Period (June 19, 2013 to the date of preliminary approval). Notice to the class (and the claim form) will be provided in three languages – English, Spanish, and Haitian Creole French – and the class members will have sixty (60) days to submit a claim. In addition, a seven (7) day run-off period for receiving post-marked claims will be allowed;

    3. Subject to Court approval, eleven (11) individuals will receive an incentive payment (Service Award) for being active in the case and assisting Class Counsel in the conduct of the case and settlement negotiations. The identity of these individuals, a summary of their respective contributions, and their corresponding Service Award amount is set forth in the attached Exhibit B. Plaintiffs also will include this specific request for an award of Service Awards together with their application for attorneys' fees and costs;[4]

    4. In addition, $5,000 of the Gross Settlement Amount, will be set aside to resolve the claims of three individuals, who previously retained Class Counsel to represent them, but who were time barred from bringing a claim under the FLSA and who could only bring a material claim under the FMWA if the Court determined that Mears misclassified its Luxury Drivers intentionally. To avoid the appearance of a conflict between these individuals and the putative class, these trailing claimants have retained or will retain separate legal counsel, who also will be paid out of the $5,000 set aside amount;

    5. Class Counsel will seek attorneys' fees and expenses in an amount no greater than thirty (30) percent of the Gross Settlement Amount (totaling $930,000), subject to the Court's

---

[4] To avoid the appearance of impropriety, the issue of Service Awards was not voted on or discussed (or even included in the presentation) before the Plaintiffs' Litigation Committee voted to accept the settlement.

approval as to both fees and expenses. All sums approved by the Court or set aside will be deducted from the Gross Settlement Amount, resulting in a Net Settlement Fund as defined in the Settlement Agreement;[5]

6. As more fully described in the Settlement Agreement, the Net Settlement Fund will be distributed based on the number of purchased days for each driver during the Class Period multiplied by a per day amount (Settlement Value Multiple), resulting in a specific settlement amount for each Class Member. After accounting for the attorneys' fees and costs, the Service Awards and funds for trailing litigants, the Net Settlement Fund would be $2,115,000.00, (assuming the Court agreed with the expressed amounts). Dividing this amount by 368,477 (the estimated total number of contracted days of service as of February 21, 2018), each Class Member would receive approximately $5.74 per day purchased over a four year and a half year period.[6] If an individual does not submit a claim or, alternatively, opts-out of the settlement, that individual's settlement amount will revert to Mears;

---

[5] Class Counsel maintains that the attorneys' fees and costs incurred to date far exceed the amount requested. While perhaps unnecessary, Plaintiffs' counsel requested and received approval from the Plaintiffs' Litigation Committee to submit an application for seeking 30% of the settlement fund. Plaintiffs' counsel will submit an application for fees and costs within a week from this filing to provide the Court with some context of the work underlying the expenses and fees incurred in connection with this request for preliminary approval. Counsel recognizes, however, that the Court would likely defer the determination of this issue until such time a final determination is made so objectors, if any, can voice any concern.

[6] Given the nature of the relationship between the Parties, the tenure of Luxury Vehicle Drivers over the almost four and a half year class period ranged from 7 to 1,704 contracted days of service through the end of February, 2018. For individuals who provided services to Defendant for only one week, as one would expect, the damage amount is very low. Applying the settlement methodology to the specific Class Members' contracted days of service provides a range of estimated damages from a low $40.18 to a high of $9,780.69. The Parties anticipate that these figures would decrease slightly given modest increases in the total number of contracted days of service while the Parties await a preliminary order approving the settlement.

7. Each class member submitting a claim form will release Mears and its affiliates from all claims that were brought or that could have been brought in this case; and

8. Because some class members still contract with Mears, the Settlement Agreement contains standard non-retaliation provisions.

**II.     The Applicable Law on Approval**

Settling parties seek judicial approval of a proposed settlement to ensure fairness and to give effect to FLSA releases. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (claims for back wages arising under FLSA may be settled or compromised only with approval of court or Secretary of Labor); *see also Dunham v. Brevard Cnty. Sch. Bd.*, 401 So. 2d 888, 889 (Fla. 5th DCA 1981). Similarly, "Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any class action settlement. In determining whether to approve a settlement, the Court must ensure that the settlement is fair, adequate, reasonable, and not the product of collusion between the parties." *Poertner v. The Gillette Company*, No. 6:12-cv-803-Orl-31DAB, 2014 WL 4162771, at *2 (M.D. Fla. Aug. 21, 2014).

The law favors compromise and settlement of collective action and class action lawsuits. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (noting "strong judicial policy favoring settlement"); *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977). The policy favoring settlement is especially relevant in class and collective actions and other complex matters, where the inherent costs, delays, and risks of litigation might otherwise overwhelm any potential benefit the class could hope to attain. *See Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citations omitted)

("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.").

The strong judicial policy favoring settlements, however, does not absolve the Court from applying careful scrutiny of a proposed settlement. *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014), *cert, denied,* 135 S. Ct. 1429 (2015). The law in the Eleventh Circuit requires court approval of both class and collective actions,[7] and the approval considerations, reduced to their essence, are almost identical.

A district court should approve a class action settlement if it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (quoting *Bennett*, 737 F.2d at 986) (internal quotation marks omitted); "In determining the reasonableness of a settlement, the Court may consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *See Dorismond v. Wyndham Vacation Ownership, Inc.*, 2014 WL 2861483, at *2 (M.D.Fla. June 23, 2014) (citing *Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)). While the Eleventh Circuit has enumerated six factors for evaluating a class action settlement,[8] the bottom line is that the settlement must be "fair, adequate and

---

[7] FLSA settlements also may be approved by the U.S. Department of Labor. *See* discussion, *infra*.

[8] *See generally Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011) (identifying the six factors as: "(1) the likelihood of success at trial; (2) the range of possible

9

reasonable." Thus, this Court is not bound by the six factors and may consider other aspects of the proposed settlement and the claims in the case. *See, e.g., Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert, denied,* 459 U.S. 1217 (1983).

Under the FLSA, approval is warranted where a settlement resolves a *bona fide* dispute between the parties "with respect to coverage [and] amount due under the Act;" is fair and reasonable; and is the product of serious, informed, arm's-length negotiations. *Lynn's Food Stores*, 679 F.2d at 1353-54, n.8; *Bennett*, 737 F.2d at 987, n.9. The same is true with respect to class action settlements under Rule 23. *See Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646-COHN-SELTZ, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

Based upon Class Counsel's expertise and experience, the settlement is a fair, adequate and reasonable resolution of the claims of the proposed class. Absent fraud and collusion, the Court not only may rely on the judgment of experienced counsel, but "should [also] be hesitant to substitute its own judgment for that of counsel." *Diaz v. Hillsborough County Hosp. Auth.*, No. 90 Civ. 120, 2000 U.S. Dist. LEXIS 14061, at *4 (M.D. Fla. Aug. 7, 2000) (internal quotations and citation omitted).

As discussed above, the Parties dispute whether any liability exists in the instant action. Nonetheless, they have agreed to settle all claims in this dispute through the execution of the Settlement Agreement, because the Parties agree that if they had continued to litigate this

---

recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved").

matter, they would have faced uncertain risk and unavoidable fees and costs to prove their claims and defenses at summary judgment and/or at trial.

While Plaintiffs believe the allegations asserted have merit and are supported by the evidence developed to date, Class Counsel are experienced and realistic, understanding that the resolution of liability and damage issues – issues on which Plaintiffs carry the burden of proof – the results of a trial on the merits, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. To this end, while the amount of Plaintiffs' estimated damages stated in response to the Court's interrogatories are more than the settlement amount, Class Counsel considered a multitude of factual and legal issues, including compensable time, exemptions and wage offsets, in determining that the settlement is fair, adequate and reasonable. Further, Class Counsel recognized the significant expenses that would be incurred to continue the prosecution and defense of this action to its conclusion would likely prevent any future opportunity to reach a fair compromise given the Parties' respective investment in the case. In reaching this resolution, moreover, Class Counsel took into account not only the risk and impact of continued litigation, but also uncertainties surrounding the transportation industry due to technological advancements and the significant risk that those uncertainties could adversely impact Defendant's business model during the years it took the Parties to reach an outcome on the merits through trial and appeal. When presenting these issues in a detailed presentation, the Plaintiffs' Litigation Committee unanimously approved to accept the settlement.

Similarly, while Mears and its counsel believe Plaintiffs' case has no merit and they intend to defend vigorously against all claims asserted and propriety of the proposed class and

collective action, like the Plaintiffs and their counsel, they have recognized the risks and costs of litigation, and made a business decision to settle the case based on these factors and the vagaries of litigation, without admitting any liability or wrongdoing.

The Parties have attached the proposed Notice (Exhibit C) and proposed Claim Form (Exhibit D). To ensure transparency in the process and to address any questions the Court has, the parties will request hearing time under the Local Rules whether this Motion is addressed directly by the Court or referred to the Magistrate for a Report & Recommendation.

In sum, the Settlement Agreement confers substantial benefits upon the class members and was reached after significant investigation and discovery with respect to the putative class, a full-day settlement conference with a federal magistrate judge, and two weeks of extensive negotiations. The Parties have worked diligently in an adversarial yet professional manner to effect the terms of the Settlement Agreement, and have prepared the attached documents for preliminary Court approval and notice authorization. For all these reasons, the Motion should be granted.

### III. Provisional Certification Of A Rule 23 Class And Apppointment Of Class Counsel.

The Parties acknowledge that, even in the context of settlement, the Court must satisfy itself that the proposed class is certifiable under Fed. R. Civ. P. 23(a) and one of the provisions of Fed. R. Civ. P. 23(b), and that proposed Class Counsel are adequate representatives. *See generally Pierre-Val v. Buccaneers Ltd.*, No. 8:14-cv-01182-CEH-EAJ, 2015 WL 3776918 (M.D. Fla. June 17, 2015). While the elements of certification would be vigorously contested if a settlement is not achieved, and the Parties have agreed that stipulating to a class at this settlement stage will not prejudice their positions if the Settlement Agreement is not approved,

the Court has evidence demonstrating that the standard for class certification can be met given there is no challenge and the following factors: there are 912 Luxury Drivers who currently meet the proposed class definition; the Court can find for purposes of settlement that the common contractor agreement provides commonality under Rule 23(a)(2) and typicality under Rule 23(a)(3); and the class representatives will "fairly and adequately" protect the class interests and there is no conflict between the representatives, who have vigorously prosecuted this case, and the class. Similarly, the determination of whether the independent contractors were misclassified raises questions of law or fact common to class members that predominate over any questions affecting only individual members.

Plaintiffs' Counsel is well-positioned to represent the class. Lead counsel frequently advises companies (many Fortune 500 companies) involving the misclassification of workers as independent contractors in a number of industries, including the transportation industry. Lead counsel has litigated dozens of class and collective actions (some involving the misclassification of workers as independent contractors) and has been published analyzing the independent contractor issue.

## CONCLUSION

The Court should grant the Motion, preliminarily approve the settlement, and allow issuance of notice to the class.

Respectfully submitted,

*s/Kevin W. Shaughnessy*
Kevin W. Shaughnessy, Esq.
Florida Bar No. 0473448
kshaughnessy@bakerlaw.com
James W. Seegers, Esq.
Florida Bar No. 0122531

Respectfully submitted,

*s/Thomas R. Bundy III*
Thomas R. Bundy III, Esq.**
**LAWRENCE & BUNDY LLC**
8115 Maple Lawn Blvd., Suite 350
Fulton, Maryland 20759
(240) 786-4512

jseegers@bakerlaw.com
Mary Caroline Miller, Esq.
Florida Bar No. 0125712
mcmiller@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue
Suite 2300 Post Office Box 112
Orlando, Florida 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
*Attorneys for Defendants*

thomas.bundy@lawrencebundy.com

** *Admitted pro hac vice*

Leslie J. Bryan, Esq.
Florida Bar No. 95535
Lisa M. Haldar, Esq.**
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street, N.W.
Suite 1650
Atlanta, Georgia 30309
(404) 400-3350
leslie.bryan@lawrencebundy.com
lisa.haldar@lawrencebundy.com

** *Admitted pro hac vice*

Carlos J. Burruezo, Esq.
Florida Bar No. 843458
Bertha L. Burruezo, Esq.
Florida Bar No. 596973
**BURRUEZO & BURRUEZO, PLLC**
941 Lake Baldwin Lane, Suite 102
Orlando (Baldwin Park), Florida 32814
(407) 754-2904
carlos@burruezolaw.com
bertha@burruezolaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 29, 2018, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the United States District Court ECF/Pacer Portal which will send a notice to the following:

Thomas R. Bundy, III, Esq.
LAWRENCE & BUNDY LLC
8115 Maple Lawn Blvd., Suite 350
Fulton, Maryland 20759
thomas.bundy@lawrencebundy.com

Leslie J. Bryan, Esq.
Lisa M. Haldar, Esq.
LAWRENCE & BUNDY LLC
1180 West Peachstreet Street, NW
Suite 1650
Atlanta, Georgia 30309
leslie.bryan@lawrencebundy.com
lisa.haldar@lawrencebundy.com

Carlos J. Burruezo, Esq.
Bertha L. Burruezo, Esq.
BURRUEZO & BURRUEZO, PLLC
941 Lake Baldwin Lane, Suite 102
Orlando (Baldwin Park), Florida 32814
carlos@burruezolaw.com
bertha@burruezolaw.com
***Attorneys for Plaintiffs***

                                                *s/Kevin W. Shaughnessy*
                                                Kevin W. Shaughnessy